# Pennsylvania Bar Association Group Insurance

UMSTED, Deputy Attorney General, June 27, 1950. —You have asked this department for an opinion concerning the authority of a life insurance company, doing business in Pennsylvania, to write policies providing for death and permanent total disability benefits and for accidental death and dismemberment insuring a group comprising certain members of the Pennsylvania Bar Association and their employes. You set forth the general outlines of the plan which specifies the eligibility requirements for participation, as follows:

"All members of the Pennsylvania Bar Association in good standing and regularly attending to the normal duties of their profession at their established place of business and all employees of such members with two or more years of full time active service, are eligible to join the plan. When a member of the Association subscribes to the plan, it is necessary that he enroll those of his employees who have been with him two or more years. Those employees who have been employed for a shorter period of time may be included in the plan at the option of the employer."

You also indicate that three trustees appointed by the bar association applied on August 9, 1949, for policies of insurance under the proposed plan and that policies accordingly written were delivered prior to, and effective August 31, 1949. You, therefore, assume the policies were not written under the provisions of the Group Life Insurance Act of May 11, 1949, P. L. 1210, 40 PS §§532.1 et seq., but under section 415(b)

(5) of the Insurance Company Law of May 17, 1921, P. L. 682, as amended by the Act of July 5, 1947, P. L. 1305.

Your primary assumption, based upon the effective date of the Pennsylvania Bar Association plan of August 31, 1949, and the delivery of the insurance policies before then, that legality is governed by section 415(b) (5) of the Insurance Company Law of May 17, 1921, P. L. 682, as amended by the Act of July 5, 1947, P. L. 1305, is correct. The Act of May 11, 1949, P. L. 1210, 40 PS §§532.1 et seq., which repeals section 415 of the Insurance Company Law of 1921, as amended, did not specify any effective date and, therefore, did not become effective until September 1st of that year: section 4 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §504.

Section 415(b) (5) of the Act of 1921, as amended by the Act of 1947, reads as follows:

"(5) Life insurance, covering the employes of two or more employers in the same industry for the benefit of persons other than the employers, written under a policy issued to the trustees of a fund, established by such employers, which trustees shall be appointed by the employers and shall be deemed the employer for the purposes of this act. Such insurance shall be subject to the following requirements,—(i) The persons eligible for insurance shall be all of the employes of the contributing employers, or all of any class or classes thereof determined by conditions pertaining to their employment. The policy may provide that the term 'employes' shall include the individual proprietor or partners, if any employer is an individual proprietor or a partnership. The policy may provide that the term 'employes' shall include the trustees, or their employes, or both, if their duties are principally connected with such trusteeship. The policy may provide that the term 'employes' shall include retired employes; (ii)

The premium for the policy shall be paid by the trustees wholly from funds contributed by the employers of the insured persons. The policy shall insure all eligible persons or all except any as to whom evidence of individual insurability is not satisfactory to the insurer; (iii) The amounts of insurance under the policy must be based upon some plan, precluding individual selection, either by the insured persons, or by the trustees, or employers."

Sound construction of the foregoing subsection of the Act of 1921, as added in 1947, calls for a discussion of its historical background.

Before July 5, 1947, group life insurance for employes was permitted to not less than 25 employes of one employer and its benefits denied employes in comparatively small industries unless those industries were affiliates under common control or subsidiaries of a controlling employer: Section 415 (a) of the Act of May 17, 1921, P. L. 682, as added by the Act of April 26, 1929, P. L. 785, and as amended by the Act of June 21, 1947, P. L. 855.

The law thus apparently discriminated against a great mass of employes in this State working in the same type industries, whose employers were not affiliated or controlled in the sense of being legally bound together under a common industrial business leadership, and none of whom employed 25 or more persons. The disability, in this regard, of bank clerks in unaffiliated country banks serves as a good example of this situation. Without doubt, remedial legislation was indicated. At the same time, the actuarial soundness of the law had to be preserved. To this end several important factors required consideration.

The number of employes in each group guaranteed quantity coverage to permit the issuance of a low cost policy, and the confinement of the members of each group to employment in the same type of industry, as-

sured a reasonable uniformity of risk. In groups of 25 or more employes, age, health and living conditions tend to average, and each industry has comparative working risks to the life and health of those employed in it.

But the same may not be said of the employers whose employes are insured under a group policy. Being executives, in the broad sense of the word, they do meet comparative working risks to life and health. They do not, however, numbering as they must but a few, average in age, health and living conditions.

Now, reading sections 415($a$) and 415($b$) (5) together, we find no difficulty in determining the legislative inspiration for the addition of section 415($b$) (5) in 1947. It was to allow group life insurance *to employes* working in like industries provided they would combine in groups of 25, or more, under a common policyholder. Such insurance for their employers was a secondary consideration and made optional. The Pennsylvania Bar Association plan for group insurance must be scrutinized from this angle.

We must first determine if the members of that association "in good standing and regularly attending to the normal duties of their profession at their established place of business", are engaged "in the same industry". If that answer be in the affirmative, we must then determine who are the employes of such members. For under the law it is only where all of the employes of contributing employers, or all of any class or classes thereof, determined by conditions pertaining to their employment, have combined in a group life insurance plan that their employers may join in. The plan itself contemplates this disability of employers and meets it with the proviso that, "it is necessary that he (a member joining the plan) enroll those of his employes who have been with him two or more years".

The Pennsylvania Bar Association was incorporated July 1, 1895, in the Court of Common Pleas of Dauphin County as of September term, 1895, no. 153 as a first class corporation without capital stock, "to advance the science of jurisprudence; to promote the administration of justice; to secure proper legislation; to encourage a thorough legal education; to uphold the honor and dignity of the bar; to cultivate cordial intercourse among the lawyers of Pennsylvania; and to perpetuate the history of the profession and the memory of its members, and such kindred purposes as the association may from time to time determine".

This purpose is philanthropic, educational and historical, but it is not for profit or financial gain and is not industrial (Western Pennsylvania Hospital et al. v. Lichliter et al., Appellant, 340 Pa. 382 (1941)), and definitions of "industry", infra. It follows that membership alone in the Pennsylvania Bar Association cannot be said to be engagement in an industry. However, members "in good standing and regularly attending to the normal duties of their profession at their established place of business", as the plan describes those qualified for group life insurance, may even so be engaged in an "industry" within the meaning of section 415(b) (5) of the Act of 1921, if their profession may be defined as an industry.

Article II, sec. 4, of the bylaws of the association, vol. 1, Report of Pennsylvania Bar Association 413 (1895), provides as follows:

"Any member of the Bar of the Supreme Court of Pennsylvania, residing and practicing in this State; any State or Federal Judge residing in this State; and any professor in a regularly organized law school in this State, who shall comply with the requirements hereinafter set forth, may become an active member upon approval by the Committee on Admissions, ratified by a three-fourths ballot of the members present

and voting at the next annual or adjourned meeting of the Association."

Practicing lawyers, judges and law school professors, as a class, are engaged in a common remunerative pursuit identified as "jurisprudence", and defined in Black's Law Dictionary as "The philosophy of law, or the science which treats of the principles of positive law and legal relations". Is this an industry? We think, in the accepted usage of the word, it is.

Black's Law Dictionary contains this definition for "industry", page 956:

"Any department or branch of art, occupation, or business conducted as a means of livelihood or for profit; especially, one which employs much labor and capital and is a distinct branch of trade. . . ."

Webster's New International Dictionary this, page 1271:

"Any department or branch of art, occupation, or business; esp., one which employs much labor and capital and is a distinct branch of trade; . . ."

43 C. J. S. furnishes this, page 39:

". . . any department or branch of art, occupation, or business, especially one which employs much labor and capital and is a distinct branch of trade, . . ."

From the many cases cited in 21 Words and Phrases, it appears, however, that the majority legal view would require the element of profit or means of livelihood to be present in order for a branch of art, occupation or business properly to be classified as an industry. But this element of work for profit or means of livelihood need only be considered briefly here, because the association plan confines eligibility for subscription to members "regularly attending to the normal duties of their profession".

Perhaps, practicing lawyers, judges and law professors do not conduct their businesses on the plane of commercial competition and calculated gain accepted

as the standard for tradesmen, but they are neverthe-less required to find subsistence through their labors and profit from their work. They must meet financial obligations to their families and their communities. True, their code of ethics is high, but so is the position in society they must maintain. Daniel Webster very tersely emphasized this when he said of lawyers, "They work hard, live well and die poor".

We come now to the question of employer-employe relationship, the existence of which we reiterate is the foundation of the industrial employer's right, as such, to participate in a group life insurance policy. This is largely a matter of fact in each case and must be determined by the peculiar attendant circumstances presented by each situation: Rodgers v. Washington County Institution District, 349 Pa. 357, 360 (1944); and McGrath v. Budd Manufacturing Co., 348 Pa. 619 (1944). And the rules of law to which the facts must be applied are precisely cumulated in Blum Unemployment Compensation Case, 163 Pa. Superior Ct. 271, 276 (1948), as follows:

". . . It has been said that the master and servant, or employer and employee, relationship exists where the employer has the right to select the employee, the power to remove and discharge him, and the right to direct what work shall be done, and the way and manner in which it shall be done. McColligan v. Pennsylvania Railroad Co., 214 Pa. 229, 232, 63 A. 792; Walters v. Kaufmann Department Stores, Inc., 334 Pa. 233, 235, 5 A. 2d 559. The method of payment is not a determining factor in establishing the relationship of the parties. See Sechrist v. Kurtz Brothers et al., 147 Pa. Superior Ct. 214, 219, 24 A. 2d 128. But the power of an employer to terminate the employment at any time is incompatible with the full control of the work which is usually enjoyed by an independent contractor, and hence is considered as a

strong circumstance tending to show the subserviency of the employee. American Writing Machine Co. v. Unemployment Compensation Board of Review, 148 Pa. Superior Ct. 299, 304, 25 A. 2d 85.''

Obviously here, we cannot attempt to pass upon each office force engagement which may arise out of the myriad circumstances of a lawyer's practice and say which does or which does not constitute an employer-employe status. We have pointed to the rules by which these cases may be determined as they present themselves. There are, however, prevalent situations where the facts are a matter of such common knowledge the conclusions appear to be inescapable.

The practicing lawyer who conducts his own office and who hires and pays his own secretaries, stenographers, clerks and assistants is unquestionably an employer and those employed by him in his office, employes within the meaning of section 415($b$) (5) of the Act of 1921.

Where a lawyer, being a member of a group of practicing lawyers in association or comprising a partnership, engages the services of secretaries, stenographers, clerks or assistants, ordinarily he does so on behalf of himself and his associates or partners and has in concert with them the right to direct what work shall be done and the way and manner in which it shall be done, and with them has the power of removal and discharge. Part of the compensation for the services is attributable to him. Here is another classical case where all of the elements of an employer-employe status are present. All of the associates or partners are the employer of all those working for them.

But a partnership agreement or a contract of association between lawyers may contain provisions antipathetic to an employer-employe status between some members of the partnership or association and one or more of the employes in the office. For example, each

partner in a law firm may employ his own secretary, direct his or her business activities and pay compensation from his own pocket. In that case, each secretary who has insured under the group life insurance policy would only qualify his or her own employer, and all such secretaries in one law office would not be required to join the plan since they cannot all be said to be employes of the same employer. However, common employes to partnership members would all be required, subject to the plan's two-year limitation, to join in the group to be insured before any of the partners, as employer, could qualify.

A judge exercises the requisite authority over the business activities of his secretaries and law clerks to establish an employer-employe status though he does not usually pay them. Those persons are compensated by the Commonwealth, or the county as the case may be, but are hired by the judge, may be dismissed by him and work under his direction and control. The payment of salary here is of minor consequence in determining the relationship of employer-employe, and negligible in the presence of all the other more important factors determinative of the question. It must be concluded that his secretaries and law clerks are employes of each judge and, subject to the plan's two-year limitation, must all be included in the life insurance policy group before the judge becomes eligible to join.

On the other hand, court clerks, tipstaves and criers are appointed as officers of the court and function in that capacity. They are, therefore, subject to dismissal not by the judge himself but by the court which may comprise one or more judges, acting in an official capacity as distinguished from a personal capacity. These persons perform the duties which the law or the court itself imposes upon them in the manner in which the law or the court directs. They are, therefore, employes or officers of the court and not the employes

of any particular judge or judges sitting on the court. They are not eligible for group insurance under the Pennsylvania Bar Association plan nor do the judges derive any right to that insurance coverage through them.

Lawyers who are engaged as counsel or in other capacities for governmental agencies, corporations or businesses and who do not conduct private office practice, employing all or part of the services of secretaries, stenographers, clerks or assistants, are not the employers of the secretaries, stenographers, clerks or assistants who aid them in the performance of the duties of their own employment. Those employes are the employes of the governmental agency itself, or of the corporation, or of the business proprietor. The lawyer, in such circumstances, may even have the right to employ or dismiss, or to direct the work to be done, or the manner in which it should be done. But his authority, in these circumstances, is as agent for, or by leave of his employer: the governmental agency, corporation or business proprietor he serves.

The business relationship between a law school professor and the secretaries, stenographers, clerks or assistants, who aid him in such work, is similar to that of counsel for a corporation and his aides. For the same reasons we conclude the status is not that of employer-employe. It follows that unless they are also engaged in the private practice of law, employing either individually or in cooperation with other lawyers, persons to assist in their legal work, that law professors and lawyers employed as counsel or in other capacities, for governmental agencies, corporations or businesses, are not eligible for group life insurance under section 415 (b) (5) of the Insurance Company Law of 1921, as amended.

The restriction in the Pennsylvania Bar Association plan of group life insurance to its members in good

standing and regularly attending to the normal duties of their profession and their employes is a valid limitation, since under section 415 (b) (5) of the Act of 1921 only the employers in an industry who care to do so are authorized to formulate a group employes' life insurance plan and select a trustee to hold in his name the policy coverage. This simply means that any number out of the employers in any one industry may combine for this purpose. Hence any number of practicing lawyers and judges out of the whole number engaged in their industry may elect to form for their employes and themselves a group for life insurance. That the number elects to limit the coverage in this case to a group restricted to certain members of the association and their employes in no way invalidates the plan for insurance which it has set up.

We are, therefore, of the opinion and you are accordingly advised:

1. Lawyers and judges regularly attending the normal duties of their profession at their established place of business are engaged in an industry within the meaning of section 415 (b) (5) of the Insurance Company Law of May 17, 1921, P. L. 682, as added by the Act of July 5, 1947, P. L. 1305.

2. A lawyer or a judge, being a member of the Pennsylvania Bar Association, is eligible to join in the plan established by that association for group life insurance if, in the practice of his profession, he is personally or jointly with other lawyers or judges the employer of one or more secretaries, stenographers, clerks or assistants, all of whom having been thus employed by him for two years or more, have enrolled in the plan for insurance under the group insurance policy at the time he subscribes.

3. Lawyers employed by governmental agencies, corporations or businesses as counsel or in other capacities and law professors, who do not conduct private office

practice, employing all or part of the services of one or more secretaries, stenographers, clerks or assistants, are not eligible for group life insurance under the Pennsylvania Bar Association plan.

4. Where lawyers in partnership or associated in practice jointly employ secretaries, stenographers, clerks or assistants, all such aides with two years' service must be enrolled in the group life insurance plan before any of the lawyers become eligible to join; but all lawyers in the partnership or association of lawyers need not become insured under the group policy.

5. A part-time aide or a full-time aide to a lawyer or a judge in the practice of his profession may or may not occupy to his superior an employer-employe status. This will depend upon the particular circumstances in each case and be determined by the factors of the right to hire and dismiss, to direct what work shall be done, how it shall be done and the source from which compensation is paid for the services. Where an employer-employe relationship exists all aides of each lawyer or partnership or association of lawyers, or of each judge or association of judges, must, if employed in such work for two years or more, join in the group life insurance policy before the employer or employers, in any instance, may obtain the benefits of group insurance under section 415 (b) (5) of the Act of 1921.

6. Tipstaves, court criers and court clerks do not stand in an employer-employe relationship to judges and are ineligible for group life insurance under the Pennsylvania Bar Association plan.

7. The restriction in the Pennsylvania Bar Association plan of group insurance to members and their employes is a valid limitation, which must not be construed to expand the group of insureds beyond those persons who occupy with practicing lawyers and judges, who are members of the association, an em-

ployer-employe status. The existence of the association plan, however, does not inhibit practicing lawyers and judges, who are not members of the association, from forming another group or other groups for employer-employe life insurance.